STATE OF NEBRASKA, APPELLEE, V.
FREDERICK ALLEN, APPELLANT.
690 N.W.2d 582

Filed January 7, 2005. No. S-04-379.

Thomas C. Riley, Douglas County Public Defender, and Scott C. Sladek for appellant.

Jon Bruning, Attorney General, and Jeffrey J. Lux for appellee.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Stephan, J.

The issue presented in this appeal is whether evidence obtained as a result of a warrantless investigative traffic stop, conducted solely on the basis of inaccurate vehicle registration information transmitted to police by their dispatcher, should have been suppressed as the fruit of an unreasonable seizure which violated the Fourth Amendment.

## BACKGROUND

During the early morning hours of May 23, 2003, Omaha police officers Jodi Sautter and Aaron Von Behren were patrolling the area of 33d Street and Creighton Boulevard in Omaha, Nebraska, in a marked cruiser. Sautter decided to request a registration check on a maroon minivan she was following. Using her radio, she contacted the dispatcher and "called out the numerics on the plate," stating "Nora, Henry, Nora 861" to designate Nebraska license plate No. NHN 861 displayed on the rear of the minivan. The dispatcher did not repeat the number to Sautter before responding that the plates were registered to a white Honda Accord. Upon hearing the dispatcher's report, the source of which is described in the record as a "computer system at the dispatcher station," Sautter stopped the minivan for the sole reason that "the plates didn't match the vehicle."

Approaching the minivan on foot, Sautter observed two occupants, a male driver later identified as Frederick Allen and a female passenger. Sautter informed Allen that she stopped him because the license plates did not match the vehicle he was operating and requested that he produce his operator's license, registration, and proof of insurance. Allen replied that the vehicle was owned by his girl friend and that he was unable to find the registration certificate in the vehicle. At that point, Sautter observed a beer container on the console of the minivan and detected the odor of alcohol. The officers asked Allen to exit the vehicle, and Von Behren administered field sobriety tests. Based upon the test results, the officers decided to transport Allen to police headquarters for processing on a driving under the influence charge. They conducted a pat-down search before placing Allen in the

police vehicle and found a 4-inch blade in his trouser pocket. A backup officer who had arrived on the scene during the detention remained with the minivan to await the tow vehicle.

When Sautter arrived at police headquarters, she received a call from the backup officer advising her that the minivan's vehicle identification number matched the license plate numbers displayed on the vehicle. Sautter then contacted the dispatcher and advised her of the information received from the backup officer. The dispatcher determined that she had mistakenly run a check on plate No. NHN 864 instead of NHN 861, as Sautter had requested. Sautter reported the dispatcher's error to a police sergeant and noted it on her official report. While at the police station, Sautter ran an additional check on Allen's identification which disclosed that his operator's license was under suspension.

Allen was charged by information with operating a motor vehicle while his operator's license had been suspended or revoked in violation of Neb. Rev. Stat. § 60-6,196(6) (Cum. Supp. 2002), a Class IV felony. He filed a motion to suppress all evidence obtained as a result of the traffic stop on grounds that police "lacked sufficient probable cause to stop [his] vehicle and such detention was improper." The district court conducted a hearing on the motion, at which hearing Sautter testified to the facts summarized above.

In an order overruling the motion to suppress, the district court found that the traffic stop "was premised only upon the information provided by the dispatcher, which if true, constituted a traffic violation." The court determined that the actions of Sautter in stopping Allen's vehicle were "objectively reasonable and in good faith" and specifically declined to impute the dispatcher's error to Sautter because "[t]here was no evidence that the dispatcher had the powers of a law enforcement officer." The court reasoned that the purpose of the exclusionary rule would not be served by exclusion of the evidence obtained because there was no indication that Sautter was not acting reasonably in relying upon the information which she initially received from the dispatcher. In addition, the court found that after the vehicle had been stopped, Allen's failure to produce a registration and the evidence of alcohol use justified the officers' decision in detaining Allen further for field sobriety testing. The court found that

Allen's performance on the field sobriety test and the discovery of the knife during the pat-down search furnished probable cause for his arrest.

At a stipulated bench trial, Allen preserved his objection to evidence obtained as a result of the traffic stop and renewed his motion to suppress, both of which were overruled. The district court found Allen guilty beyond a reasonable doubt and sentenced him to intensive supervised probation for a period of 2 years. Allen perfected this timely appeal, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

Allen assigns that the district court erred in overruling his motion to suppress.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress based on the Fourth Amendment, apart from determinations of reasonable suspicion to conduct investigative stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000).

## ANALYSIS

We begin by noting that Sautter's radio request for a registration check does not present a constitutional issue. The provisions of both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect against unreasonable seizures. *State v. Burdette, supra.* If there is no detention or seizure, these constitutional safeguards do not arise. See *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997). No reasonable suspicion or probable cause was necessary for Sautter to request the registration check because the check itself did not require or involve a detention or seizure. See *id.*

However, a seizure occurred when Sautter stopped the vehicle operated by Allen and requested that he produce the registration. See *State v. Burdette, supra.* Sautter acted without a search warrant. Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by the exigencies which justify their initiation. *State v. Roberts,* 261 Neb. 403, 623 N.W.2d 298 (2001). Acting without a warrant, police can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the Fourth Amendment. *State v. Burdette, supra; State v. Anderson,* 258 Neb. 627, 605 N.W.2d 124 (2000). An investigative stop of this nature is the least intrusive type of police-citizen encounter subjected to Fourth Amendment protection. *Id.* When further questions are created in an officer's mind, an investigative stop may be prolonged and the scope enlarged as circumstances require. *State v. Soukharith, supra.*

In this case, Allen argues that the investigative stop violated his Fourth Amendment rights because it was based entirely upon inaccurate information regarding the registration of the vehicle he was operating and that all evidence derived from the stop should therefore have been suppressed under the Fourth Amendment exclusionary rule. The State concedes that Sautter relied upon inaccurate information in stopping Allen, but argues that there was no police misconduct which would trigger application of the exclusionary rule. The State also argues that Sautter's actions were objectively reasonable and therefore within the good faith exception to the exclusionary rule first recognized in *United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Neither party disputes that had it been accurate, the information transmitted to Sautter by the dispatcher would have justified an investigative stop. See *State v. Bowers,* 250 Neb. 151, 548 N.W.2d 725 (1996) (police officer's observation of vehicle without license plates or in-transit tags is legitimate basis for reasonable, articulable suspicion justifying brief investigative stop).

The U.S. Supreme Court has held that the "wrong condemned by the [Fourth] Amendment is 'fully accomplished' by

the unlawful search or seizure itself." *United States v. Leon*, 468 U.S. at 906, quoting *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). Inasmuch as "the Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," the exclusionary rule "operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." *Arizona v. Evans*, 514 U.S. 1, 10, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995). Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. at 347. "This prohibition applies as well to the fruits of the illegally seized evidence." *Id.* However, "[w]here 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted.' " *Arizona v. Evans*, 514 U.S. at 11, quoting *United States v. Janis*, 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976).

In *Arizona v. Evans*, the Court held that the exclusionary rule did not require suppression of evidence seized incident to an arrest conducted pursuant to what the officer believed to be an outstanding arrest warrant. It was subsequently determined that the warrant had been quashed prior to the arrest but that apparently due to a clerical error by court employees, the information had not been transmitted to law enforcement personnel. The Court reasoned that if court employees were responsible for the error,

> there is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. Because court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime . . . they have no stake in the outcome of particular criminal prosecutions. . . . The threat of exclusion of evidence could not be expected to deter such individuals from failing to inform police officials that a warrant had been quashed.

(Citations omitted.) *Arizona v. Evans*, 514 U.S. at 15. Thus, the Court concluded that "[a]pplication of the *Leon* framework supports a categorical exception to the exclusionary rule for clerical

errors of court employees." 514 U.S. at 16. However, the Court specifically declined to address the question of whether a similar analysis would be applied "in order to determine whether the evidence should be suppressed if police personnel were responsible for the error." 514 U.S. at 16 n.5.

In the present case, the State argues that the reasoning of *Arizona v. Evans* should be applied because the dispatcher was neither a law enforcement officer nor an agent of law enforcement. Allen, however, contends that "[t]he failure of either the officer or the dispatcher to take the few seconds to check that the license plate number had been if [sic] fact heard correctly was careless police work, the kind that the exclusionary rule should strive to prevent." Brief for appellant at 5. The district court specifically declined "to impute the dispatcher's mistake to Sautter to invalidate a suspicion that was objectively reasonable" because "[t]here was no evidence that the dispatcher had the powers of a law enforcement officer" and thus that application of the exclusionary rule would not serve its intended deterrent purpose.

The record does not reflect the name of the dispatcher or the identity of her employer. All we know about the dispatcher is derived from the following portion of Sautter's testimony at the suppression hearing:

[Defense counsel]. And when you're talking about calling in to dispatch, this is the Omaha Police Department's dispatch?

[Sautter]. Yes.

Q. Okay. So this is part of the Omaha Police Department?

A. They also do Douglas County and State Patrol, so I —

Q. Law enforcement?

A. Yes.

Q. All right. It's not part of the court system —

A. No.

We agree with the district court that the record does not establish that the dispatcher possessed all the powers of a law enforcement officer. However, the record does reflect that the dispatcher was "not part of the court system." We thus conclude that the facts in this case are distinguishable from *Arizona v. Evans*, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995), because the source of

the information on which Sautter relied in making the investigative stop was not a court employee. Rather, the dispatcher is a person who can fairly be characterized as an "adjunct[] to the law enforcement team." *Arizona v. Evans*, 514 U.S. at 15. Thus, Sautter stopped the vehicle operated by Allen on the basis of information which she received "via police channels." See 4 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment § 9.5(i) (4th ed. 2004).

We considered a similar circumstance in *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997), which involved a challenge to an investigative stop based upon the officer's receipt of a dispatch report indicating that there was a missing person associated with the vehicle and his observation that the driver of the vehicle did not match the description of the missing person. We stated that " '[a] reasonably founded suspicion to stop a vehicle cannot be based solely on the receipt by the stopping officer of a radio dispatch to stop the described vehicle *without any proof of the factual foundation* for the relayed message.' " *State v. Soukharith*, 253 Neb. at 321, 570 N.W.2d at 354, quoting *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977). However, relying on *United States v. Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985), we determined that the stop was justified because the officers who initiated the message relayed by the dispatcher had knowledge of facts creating a reasonable suspicion sufficient to justify stopping the vehicle and the stopping officer perceived that the driver did not match the description of the missing person. We noted that "[a]n investigative stop, like probable cause, is to be 'evaluated by the collective information of the police engaged in a common investigation.' " *State v. Soukharith*, 253 Neb. at 322, 570 N.W.2d at 354, quoting *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

This is not a case in which police possess factual information supporting a reasonable suspicion of criminal activity which, upon further investigation, proves to be unfounded. Here, there was no factual foundation for the information which the dispatcher transmitted to Sautter, as it is undisputed that the information was false due to the dispatcher's mistake in running the wrong license plate number. Sautter had no other reason for initiating the stop. Thus, the record reflects that neither Sautter

nor any other law enforcement personnel possessed any true fact which would support the reasonable suspicion necessary to justify an investigative stop. The stop was therefore an unreasonable seizure in violation of the Fourth Amendment.

However, " 'whether the exclusionary rule's remedy is appropriate in a particular context [is] an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' " *Arizona v. Evans*, 514 U.S. 1, 10, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995), quoting *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). See, also, *State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000). The State argues that the exclusionary rule should not be applied in this case because Sautter's actions in response to the information she initially received from the dispatcher were objectively reasonable and thus fall within the good faith exception to the exclusionary rule. We have held that if police have acted without a search warrant, the State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement. *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001); *State v. Davidson, supra.* It follows that the State must bear the burden of showing that the good faith exception applies in the case of an unconstitutional warrantless search. See, *U.S. v. Santa*, 180 F.3d 20 (2d Cir. 1999); *Hoay v. State*, 348 Ark. 80, 71 S.W.3d 573 (2002).

In this case, the State did not establish the applicability of the "categorical exception to the exclusionary rule" recognized in *Arizona v. Evans*, 514 U.S. at 16, because it did not establish that the erroneous information upon which the stop was predicated was supplied by a court employee. As noted above, the source of the incorrect information was the dispatcher whose role, based on the limited record before us, was at least that of an adjunct to law enforcement. Thus, we are presented with the issue which the U.S. Supreme Court did not reach in *Arizona v. Evans*; namely, whether there is a good faith exception to the exclusionary rule when law enforcement personnel are responsible for erroneous information upon which other officers act in effecting a warrantless search or seizure. Perhaps foreshadowing this issue, a concurring opinion in *Arizona v. Evans*, 514 U.S. at 17, notes that "[s]urely it would *not* be reasonable for the police to rely, say, on

a recordkeeping system, their own or some other agency's, that has no mechanism to ensure its accuracy over time and that routinely leads to false arrests . . . ." (O'Connor, J., concurring.)

The State relies upon *U.S. v. De Leon-Reyna*, 930 F.2d 396 (5th Cir. 1991), which involved an investigative stop based in part upon a dispatcher's report that the license plate numbers transmitted by a border patrol officer did not correspond to the vehicle which the officer was following. This information proved to be erroneous because the officer failed to utilize established code words in transmitting the license plate number and the dispatcher misunderstood the officer's recitation of the number. Reversing the trial court's suppression of evidence obtained during a search of the vehicle after it was stopped, a divided court of appeals reasoned that the incorrect license plate information the officer received from the dispatcher could be taken into account with the totality of the circumstances, "albeit discounted somewhat for lessened reliability." *Id.* at 402. Other circumstances included the officer's observation of materials known to be used for drug smuggling, the driver's unusual reaction to the officer, and the erratic movement of the vehicle.

Because there were circumstances in addition to the license plate check which formed the basis for the stop, *U.S. v. De Leon-Reyna* is distinguishable from the present case. Moreover, we question the concept of "discounting somewhat" incorrect information resulting from police negligence. Rather, we agree that "erroneous information created by the negligent conduct of a law enforcement officer cannot be used to support a finding that the officer acted reasonably." *Id.* at 402 (Thornberry, J., dissenting.)

Another case involving facts similar to those before us is *State v. White*, 660 So. 2d 664 (Fla. 1995). During a lawful traffic stop, a deputy sheriff was informed that there was an outstanding arrest warrant for the driver of the vehicle. The driver was arrested, and a search incident to the arrest produced contraband. It was later discovered that a computer in the sheriff's office incorrectly showed the arrest warrant as active when in fact it had previously been served and was no longer valid. The Florida Supreme Court concluded that the error

> boils down to one unmistakable fact—failure of the police to
> maintain up-to-date and accurate computer records resulted

> in an illegal arrest and search. This type of police negligence fits squarely within the class of governmental action that the exclusionary rule was designed to deter, i.e., police negligence or misconduct that is likely to be thwarted if the evidence seized is suppressed. Suppression of evidence seized pursuant to police computer error will encourage law enforcement agencies to diligently maintain accurate and current computer records.

*Id.* at 667. The court concluded that the good faith exception was inapplicable because it was within the collective knowledge of the sheriff's office that the warrant was void and the arresting officers were thus "charged with knowledge that they had no authority to arrest the defendant." *Id.* at 668.

In considering whether the State has established a good faith exception to the exclusionary rule in this case, we apply the general analytical framework of *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), which the Court applied in the context of a warrantless search in *Arizona v. Evans*, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995). We begin with the basic concept that " ' "[t]he deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. . . ." ' " *United States v. Leon*, 468 U.S. at 919. Thus, the first step is to determine whether such conduct is involved in this case. There is no indication that Sautter or the dispatcher engaged in any willful misconduct, but there is evidence that one or both of them acted negligently. Negligence, by definition, includes the failure to do something that a reasonably careful person would do under the circumstances. See *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998). It would have been reasonable for the dispatcher to repeat the license plate number supplied by Sautter before running the check in order to verify its accuracy. Sautter testified that some dispatchers follow this practice, but the dispatcher involved in this case did not. Likewise, it would have been reasonable for Sautter to repeat the license plate number to the dispatcher in order to confirm the basis for the stop, considering that Sautter had no other basis for suspecting unlawful activity. Had either Sautter or the dispatcher used this simple verification procedure,

the error which resulted in the unconstitutional seizure would in all probability have been avoided. Thus, we conclude that this case presents the type of conduct which the exclusionary rule was historically designed to deter.

Prior to the development of the good faith exception, the Fourth Amendment exclusionary rule was criticized because of its failure to differentiate between "honest mistakes" on the part of law enforcement and "deliberate and flagrant . . . violations of the Fourth Amendment." *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 418, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) (Burger, C.J., dissenting). See 1 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment § 1.2(d) (4th ed. 2004). In *Arizona v. Evans*, the Court considered the extent and severity of the error. In that case, it found no evidence that court employees were "inclined to ignore or subvert the Fourth Amendment" so as to require the "extreme sanction of exclusion." *Arizona v. Evans*, 514 U.S. at 14-15. The Court specifically noted testimony of a court employee that the type of error at issue "occurred once every three or four years." 514 U.S. at 15. In contrast, the State did not present any evidence in this case to show that the dispatcher's error was an isolated "honest mistake" which is unlikely to recur, and we therefore cannot find that to be so.

The most important consideration in deciding whether to apply a good faith exception in this case is whether there is a basis for believing that application of the exclusionary rule will have a significant effect on those responsible for seeking and transmitting vehicle registration information which can be used as a basis for an investigative stop. See *Arizona v. Evans, supra.* We conclude that the threat of exclusion is likely to cause police officers and dispatchers to exercise greater care than was exercised in this case when obtaining and transmitting vehicle registration information which may be used to justify an investigative stop. As we have noted, simple verification procedures could have prevented the error which formed the sole basis for the unreasonable seizure in this case.

## CONCLUSION

For the reasons discussed, we conclude that the purported investigative stop of the vehicle operated by Allen was an unreasonable seizure in violation of the Fourth Amendment, because

police had no true facts upon which to base a reasonable suspicion of unlawful conduct. We further conclude that the good faith exception to the exclusionary rule is inapplicable and that therefore the district court erred in overruling Allen's motion to suppress and in receiving evidence derived from the unlawful stop at trial.

Having found reversible error, we must determine whether the evidence presented by the State was sufficient to sustain the conviction in order to determine whether to remand for a new trial. In *Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988), the Court held that the Double Jeopardy Clause does not forbid retrial so long as the sum of the evidence offered by the State and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. See, *State v. Sheets*, 260 Neb. 325, 618 N.W.2d 117 (2000); *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). Thus, although we have concluded that all evidence derived from the unlawful investigative stop was erroneously admitted, we consider it in our analysis of the sufficiency of the evidence. See, *Lockhart v. Nelson, supra*; *State v. Sheets, supra*. We conclude that the evidence so considered was sufficient to sustain Allen's conviction, and we therefore reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.