STATE OF NEBRASKA, APPELLANT, V.
RICHARD HISEY, APPELLEE.
723 N.W.2d 99

Filed October 17, 2006.    No. A-05-1138.

Paul B. Schaub, Special Prosecuting Attorney, for appellant.

Bell Island, of Island, Huff & Nichols, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and MOORE and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Richard Hisey was convicted of operating a motor vehicle while under the influence of alcohol, and of possessing an open alcoholic beverage container while doing so, by the county court for Kimball County. Hisey appealed to the district court for Kimball County, which vacated the convictions and held that evidence obtained after police stopped Hisey should be suppressed. The State appeals. We conclude that because the arresting officer relied on erroneous information contained in Nebraska's Department of Motor Vehicles (DMV) records, the officer did not have probable cause to arrest Hisey. We therefore affirm.

## BACKGROUND

On May 1, 2004, Officer Sharon Lewis of the Kimball Police Department arrested Hisey for driving with a suspended license,

driving under the influence, and driving with an open container in his vehicle. At the time of the arrest, Lewis was on duty, in uniform, and on patrol in Kimball, Nebraska, in a marked patrol car. Prior to the arrest, Lewis observed Hisey drive his pickup truck by her patrol car. She watched as Hisey stopped his vehicle in front of his house and exited the vehicle. Lewis then drove her patrol car toward Hisey's parked vehicle because she was "under the impression that . . . Hisey's license was still impounded" and "called to confirm that [impression] with dispatch." Lewis later testified that at the time of the arrest, she had this belief because at an earlier date, she had attended a trial at which Hisey had been convicted of driving under the influence of alcohol and refusal to submit to an alcohol test and his license had been impounded.

Before initiating contact with Hisey, Lewis called the dispatcher for the Kimball County sheriff's office and asked the dispatcher to check the status of Hisey's operator's license. She then pulled her patrol car to a stop next to Hisey, who was standing near the driver's side of his pickup truck. She asked Hisey whether he "[got his] license back." Hisey responded that he did. After Hisey's response, Lewis received a call on her cellular telephone from the dispatcher, who informed Lewis that Hisey's license was currently impounded. Lewis testified that when she received this information, Hisey was not free to leave, and that soon after she received this information, she arrested Hisey for driving with a suspended license.

Lewis informed Hisey he was under arrest. She allowed Hisey to take his dog into his house and then escorted him to her patrol car. She drove him to the Kimball County sheriff's office, and she performed a series of sobriety tests on him. Lewis testified that she performed the sobriety tests because, "[a]t the time [she] had original contact with him, his eyes were bloodshot and watery." She continued, "His face was very red and he was slurring his words. When he walked to the house, he was unsteady and he was walking very, very slow." She testified further that Hisey smelled of alcohol. She also testified that when she pulled up next to Hisey, both of his pickup's doors were open and she was able to see "a container of beer" and an open "12-pack of beer" in the cab of the pickup. She removed multiple cans of beer, at least

one of them open, from the pickup after she arrested Hisey and kept them as evidence. After Hisey performed the sobriety tests, Lewis arrested Hisey for driving under the influence of alcohol and driving with an open container of alcohol in his vehicle.

After Hisey's arrest, but before disposition of the charges against him, it was discovered that his license was not under impoundment at the time of arrest. The information the dispatcher conveyed to Lewis regarding the status of Hisey's license was erroneous. The dispatcher received this erroneous information from the DMV's driver and vehicle records division's records, which mistakenly indicated that Hisey was not eligible to get his impounded license back until May 2, 2004. However, after his prior convictions for driving under the influence and refusal to submit to an alcohol test, the county court ordered Hisey not to drive for a period of 60 days, beginning on March 3, 2004, on each of the two counts, but also directed credit to be given on each count for 32 days served and impoundment for the two charges to be served concurrently. Therefore, Hisey's license was not under impoundment on May 1.

On May 24, 2004, in the county court for Kimball County, Hisey was charged with, inter alia, driving under the influence of alcoholic liquor, second offense, in violation of Neb. Rev. Stat. § 60-6,196(1)(a)(c) (Supp. 2003), and driving with an open container of alcohol in his vehicle, in violation of Neb. Rev. Stat. § 60-6,211.08(2) (Reissue 2004). Hisey filed a motion to suppress all evidence obtained from the stop, search, and arrest. On September 14, the county court for Kimball County overruled Hisey's motion to suppress, opining that Lewis' conduct before and during the arrest was not unlawful. At trial on October 29, a jury found Hisey guilty of driving under the influence of alcoholic liquor and the court found him guilty of driving with an open container of alcohol in his vehicle. Thereafter, the county court sentenced Hisey on the open container conviction and held an enhancement hearing at which the court determined that the conviction for driving under the influence was Hisey's second conviction of this crime and sentenced him accordingly.

Hisey appealed to the district court for Kimball County. He claimed, inter alia, that the trial court erred in failing to sustain his motion to suppress. On August 26, 2005, the district court heard

his appeal. Hisey argued that his Fourth Amendment rights were violated and that evidence discovered as a result of the stop and detention should have been excluded from evidence at trial because the stop was illegal. The district court found that "[Lewis] contacted [Hisey] before she had current independent information about [Hisey's] license status." Because her memory proved to be wrong and the facts she articulated were false, it found, "the initial stop violated the Fourth Amendment of the United States Constitution." The district court further reasoned that Lewis made an "investigatory stop prior to receiving the information from dispatch" and that at that time, "[t]he illegal seizure had already occurred." Therefore, the district court held that "the information and evidence received by [Lewis] after the illegal stop should be suppressed from use in this case," vacated the convictions and sentences, and remanded the cause to county court for a new trial. The State timely appeals.

## ASSIGNMENTS OF ERROR

The State alleges that the district court, acting as an intermediate appellate court, erred (1) in finding that there was an illegal stop and (2) in suppressing information and evidence received by Lewis following her contact with Hisey.

## STANDARD OF REVIEW

Upon appeal from a county court in a criminal case, a district court acts as an intermediate appellate court, rather than as a trial court, and its review is limited to an examination of the county court record for error or abuse of discretion. Both a district court and a higher appellate court generally review appeals from a county court for error appearing on the record. *State v. Sparr*, 13 Neb. App. 144, 688 N.W.2d 913 (2004).

A trial court's ruling on a motion to suppress based on the Fourth Amendment, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo and findings of fact are reviewed for clear error, giving

due weight to the inferences drawn from those facts by the trial judge. *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005).

## ANALYSIS

■ The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect citizens against unreasonable seizures by police officers. To determine whether a seizure has occurred in a particular situation, the first step is to categorize the police-citizen encounter. There are three levels of police-citizen encounters:

> "The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but rather the voluntary cooperation of the citizen is elicited through noncoercive questioning. This type of contact does not rise to the level of a seizure and therefore is outside the realm of fourth amendment protection. . . . The second category, the investigative stop, is limited to brief, non-intrusive detention during a frisk for weapons or preliminary questioning. This type of encounter is considered a 'seizure' sufficient to invoke fourth amendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime. . . . The third type of police-citizen encounters, arrests, [is] characterized by highly intrusive or lengthy search or detention. The fourth amendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime."

(Citations omitted.) *State v. Van Ackeren*, 242 Neb. 479, 486-87, 495 N.W.2d 630, 636 (1993), quoting *United States v. Armstrong*, 722 F.2d 681 (11th Cir. 1984).

■ If there is no seizure, then no Fourth Amendment protection is available.

> "[A] person has been 'seized' . . . only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of

a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. . . . In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."

*State v. Twohig*, 238 Neb. 92, 99, 469 N.W.2d 344, 350 (1991), quoting *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

In *Twohig*, the Nebraska Supreme Court further clarified what constitutes a seizure, explaining:

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. . . ."

238 Neb. at 100, 469 N.W.2d at 350, quoting *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983).

Thus, when a police-citizen encounter involves the voluntary cooperation of the citizen and noncoercive questioning by an officer, there is not a seizure. See *id.* A seizure requires that either an officer asserts physical force to restrain the individual or an individual submits to an assertion of authority. See *State v. Van Ackeren, supra.*

In the instant case, we determine that Hisey was not seized during his initial encounter with Lewis on May 1, 2004, prior to when Lewis received information from the dispatcher about the status of Hisey's license and placed him under arrest.

There is little dispute over the facts of the initial encounter between Hisey and Lewis on May 1, 2004. Lewis was on patrol in her police car shortly before she encountered Hisey. She observed Hisey drive by in his pickup truck and park in front of his house. Because Lewis was under the impression that Hisey's license was still impounded, she called dispatch to confirm her suspicion and pulled up next to Hisey to speak with him about his license.

When Lewis pulled up next to Hisey, Hisey was already out of his vehicle. She parked in such a way that Hisey was not blocked in. Lewis did not impede Hisey's movement by making a traffic stop. At no time did Lewis activate the emergency lights on her patrol car. Hisey was free to walk away from Lewis at this time.

When Lewis first spoke with Hisey as she rolled to a stop, she inquired, "Hey, did you . . . get your license back?" This inquiry, as far as the record reflects, was not intense or threatening. Lewis was alone, and there is nothing in the record suggesting that her demeanor was in any way intimidating. We find nothing in the record which indicates that a reasonable person in Hisey's situation would believe that he was not free to leave when Lewis began questioning him about his license. Therefore, in the initial encounter, before Lewis stated that Hisey was under arrest, Hisey was not seized. We disagree with the district court that this initial encounter constituted an illegal stop and find that this encounter did not violate the Fourth Amendment. Because we disagree with the district court's reasoning, we do not stop our analysis at this point as the district court did, but continue to determine whether the evidence should be suppressed based on circumstances which occurred after the initial encounter.

After the initial encounter with Hisey, Lewis received a call on her cellular telephone from the dispatcher, informing her that Hisey's license was under impoundment on the relevant date. Lewis testified that when she received this information, Hisey was not free to leave. Soon after receiving this information, she arrested Hisey for driving with a suspended license. This constituted a seizure and falls under the third level of police-citizen encounters. See State v. Van Ackeren, 242 Neb. 479, 495 N.W.2d 630 (1993).

Acting without a warrant, Lewis arrested Hisey and gathered evidence later used to convict him. Warrantless searches are generally unreasonable under the Fourth Amendment, subject to a limited number of specific exceptions. See State v. Voichahoske, 271 Neb. 64, 709 N.W.2d 659 (2006). The warrantless search exceptions recognized by the Nebraska Supreme Court include: (1) searches undertaken with consent or with probable cause, (2) searches under exigent circumstances, (3)

inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *Id.* The State has the burden to prove that one of these circumstances was present during a warrantless search. See *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992). In this case, the State argues that Lewis had probable cause to arrest Hisey without a warrant.

We digress at this point to note that the State argues, despite the penalty handed down in the sentencing order by the county court for Hisey's March 3, 2004, driving under the influence and refusal to submit to an alcohol test convictions, that Hisey's license was impounded until May 2, 2004. We disagree. Our reading of the sentence imposed by the county court indicates that his driving privileges were restored prior to May 1. The information contained in the DMV records was inconsistent with the sentencing judgment of the county court. We therefore consider whether Lewis had probable cause, based upon erroneous information originating from the DMV records, to arrest Hisey.

"The concept of probable cause is not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 931, 492 N.W.2d at 30. "When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant." *Id.* at 929, 492 N.W.2d at 30. Probable cause is determined by an objective standard of reasonableness: "whether the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of crime will be found." *State v. Voichahoske*, 271 Neb. at 75, 709 N.W.2d at 670.

We must determine whether Lewis' reliance on erroneous information contained in DMV records was reasonable under the circumstances. No Nebraska court has addressed the precise issue of whether it is reasonable for a police officer to rely on erroneous information resulting from a mistake made by the DMV. However, the Nebraska Supreme Court did consider a similar issue in *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005). The *Allen* court considered whether "evidence obtained as a result of a warrantless investigative traffic stop, conducted solely on the basis of inaccurate vehicle registration information

transmitted to police by their dispatcher, should have been suppressed as the fruit of an unreasonable seizure which violated the Fourth amendment." 269 Neb. at 71, 690 N.W.2d at 586. In *Allen*, a police officer requested the police department's dispatcher to check the registration on a minivan. The dispatcher did not repeat the license number before running the check and mistakenly ran a check on the wrong license number. As a result of this mistake, the officer pulled over the driver of the minivan and discovered that the driver was operating the minivan on a suspended license. The driver argued that the evidence discovered pursuant to the stop should have been suppressed.

The *Allen* court held that there was an unreasonable seizure in violation of the Fourth Amendment, explaining:

> This is not a case in which police possess factual information supporting a reasonable suspicion of criminal activity which, upon further investigation, proves to be unfounded. Here, there was no factual foundation for the information which the dispatcher transmitted to [the officer], as it is undisputed that the information was false due to the dispatcher's mistake in running the wrong license plate number. [The officer] had no other reason for initiating the stop. Thus, the record reflects that neither [the officer] nor any other law enforcement personnel possessed any true fact which would support the reasonable suspicion necessary to justify an investigative stop. The stop was therefore an unreasonable seizure in violation of the Fourth Amendment.

*Id.* at 77-78, 690 N.W.2d at 590.

The case before us is similar to *Allen*. Once again, this is not a case in which police possessed factual information supporting reasonable suspicion, much less probable cause, of criminal activity. Neither Lewis nor the dispatcher possessed any *true* fact that would support probable cause. The "fact" forming the basis for probable cause—that Hisey's license was under impoundment—was false. Therefore, Lewis' arrest of Hisey was not based on any reasonably trustworthy information and there was no probable cause for the arrest.

However, " ' "whether the exclusionary rule's remedy is appropriate in a particular context [is] an issue separate from the

question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." ' " *Id.* at 78, 690 N.W.2d at 590, quoting *Arizona v. Evans*, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995). Therefore, we must determine whether the district court was correct in ordering suppression of the evidence. The State argues that the exclusionary rule should not apply because Lewis' conduct was neither willful nor negligent.

A good faith exception to the exclusionary rule may apply when an officer's actions are objectively reasonable. See *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005). The good faith exception has been developed in several U.S. Supreme Court cases. See, *Arizona v. Evans, supra* (evidence seized in violation of Fourth Amendment due to error by court employees fell within good faith exception to exclusionary rule); *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) (evidence obtained by police officers reasonably relying on search warrant issued by detached and neutral magistrate should not be suppressed even though warrant is later found to be unsupported by probable cause). The State must bear the burden of showing that the good faith exception applies in the case of an unconstitutional warrantless search. *State v. Allen, supra.*

In *Arizona v. Evans, supra*, the U.S. Supreme Court determined that if erroneous information is supplied by a court employee to police and an officer makes an arrest based on such information, the good faith exception to the exclusionary rule applies. In *Evans*, a police officer arrested the respondent based upon a computer inquiry that mistakenly indicated that there was an outstanding warrant for the respondent's arrest. The mistake was caused by a court employee who failed to keep the respondent's status current. The Court held that evidence obtained as the result of clerical errors by court employees was an exception to the exclusionary rule. The Court reasoned that "[b]ecause court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime . . . they have no stake in the outcome of particular criminal prosecutions." *Id.* at 15. The Court therefore concluded that application of the exclusionary rule would have little effect on the conduct of court employees.

The court in *State v. Allen, supra,* determined that the situation is different when police, not court clerks, are responsible for errors. The *Allen* court held that the good faith exception does not categorically apply when law enforcement personnel are responsible for the erroneous information upon which police officers rely. The *Allen* court reasoned that "the exclusionary rule will have a significant effect on those responsible for seeking and transmitting vehicle registration information which can be used as a basis for an investigative stop." 269 Neb. at 81, 690 N.W.2d at 593. In the case before us, however, neither a court employee nor a police official was responsible for the mistake; rather, the mistake occurred in the records of the DMV.

We conclude that the rationale in *Allen* controls the result in the instant case. The critical question is whether DMV employees, unlike the court employees in *Arizona v. Evans, supra,* may be fairly characterized as " 'adjuncts to the law enforcement team.' " *Shadler v. State,* 761 So. 2d 279, 285 (Fla. 2000). The DMV is a component department of Nebraska's executive branch. Neb. Rev. Stat. § 81-101 (Reissue 2003). On its Internet Web page, the DMV proclaims: "The mission of [the DMV] is to promote safety through education and regulation of drivers and motor vehicles and to collect revenues that provide resources for state and local government operations." Nebraska Department of Motor Vehicles, http://www.dmv.state.ne.us (last visited Sept. 7, 2005). The DMV is composed of several divisions designed to effectuate its mission, one of which is the driver and vehicle records division. *Id.*

Several statutes also govern the duties of the DMV. One provides that when a judge orders license revocation or impoundment, the director of the DMV "shall immediately revoke the license and make available to the Superintendent of Law Enforcement and Public Safety an updated record of such revocation," after which it will be "the duty of the Nebraska State Patrol to enforce the conditions of such revocation . . . ." Neb. Rev. Stat. § 60-496 (Reissue 2004). Another states that a peace officer may revoke a party's operator's license for refusal to submit to a chemical test to determine whether the party is under the influence of alcohol or for a positive test of being under the influence of alcohol and that when the peace officer so acts, he

does so as an "agent for the Director of Motor Vehicles." Neb. Rev. Stat. § 60-498.01(2) (Supp. 2003). The DMV is also responsible for administrative license revocations, which are intended to protect the public from the health and safety hazards of drunk driving and deter drunk driving. See *State v. Young*, 249 Neb. 539, 544 N.W.2d 808 (1996).

The Nebraska State Patrol and other state law enforcement agencies have duties related to those of the DMV. It is the duty of the Nebraska State Patrol to ensure that drivers do not violate the rules and regulations promulgated by the director of the DMV. See Neb. Rev. Stat. § 81-2005 (Supp. 2005). It is also the duty of the Nebraska State Patrol, along with other law enforcement officers in the State of Nebraska, to enforce "the laws regulating the registration, operation, and use of vehicles upon the highway." Neb. Rev. Stat. § 81-2006 (Reissue 1999).

This analysis demonstrates that the DMV is closely related to law enforcement in the State of Nebraska and is integral to enforcement of the laws concerning motor vehicles and persons who operate vehicles. The duties of the DMV are clearly interrelated with law enforcement duties. The DMV helps regulate and enforce the laws pertaining to licensing and driving in Nebraska.

We also find instructive the decision of the Supreme Court of Florida in *Shadler v. State*, 761 So. 2d 279 (Fla. 2000). In *Shadler*, the court held that "the exclusionary rule applies to an error committed by the Florida Department of Highway Safety and Motor Vehicles through its Division of Driver Licenses." 761 So. 2d at 280. In *Shadler*, a police officer received information from a fellow officer and a dispatcher that the defendant's license was suspended. The officer who received the information then stopped the defendant and, at that time, performed a computerized check of his license through the Florida "Department of Highway Safety and Motor Vehicles, Division of Driver Licenses," which verified that the defendant's license was suspended. *Id.* The officer arrested the defendant based on this information and discovered contraband during a search incident to the arrest. On appeal, the issue was whether the contraband should be suppressed because the information upon which the officer acted was erroneous.

In reviewing the issue, the *Shadler* court analyzed the duties of Florida's Department of Highway Safety and Motor Vehicles. The court found that the department was "a vital part of the law enforcement infrastructure" of the state, *id.* at 284, and was "essentially a law enforcement agency," *id.* at 285. The court further found that error by the department in maintaining licensing status records "puts thousands of Florida's citizens at risk of unlawful arrests and subsequent seizures" and that "exclusion of evidence in cases such as the one at bar will surely serve to encourage accurate record-keeping of driver's license information." *Id.* at 285. Therefore, the court held that an error made by the department was basically a law enforcement error, and it therefore found that "the trial court correctly excluded the evidence obtained during the unlawful search." *Id.* at 286.

We similarly find that the evidence obtained during Hisey's arrest should be suppressed. The purpose of the exclusionary rule is to deter police and adjuncts of law enforcement from conduct that will result in a denial of rights to people. See *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005). We find that the threat of exclusion of evidence will likely encourage DMV employees charged with recording and transmitting information on license impoundments to exercise greater caution. The purpose of the exclusionary rule will therefore be served if the evidence from the arrest in this case is suppressed. While our analysis differs from that of the district court, we conclude that the court's judgment was correct. See *In re Estate of Lamplaugh*, 270 Neb. 941, 708 N.W.2d 645 (2006).

## CONCLUSION

We find that while the initial stop of Hisey was not unlawful, the subsequent arrest of Hisey was made without probable cause and was unlawful. The evidence obtained during Hisey's arrest should be suppressed. We therefore affirm the judgment of the district court.

AFFIRMED.