IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LOPEZ-MARTINEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLANT,

V.

ALEJANDRINO LOPEZ-MARTINEZ, APPELLEE.

Filed February 28, 2023.    No. A-22-828.

Appeal from the District Court for Seward County: JAMES C. STECKER, Judge. Reversed and remanded for further proceedings.

Lory A. Pasold, Chief Deputy Seward County Attorney, for appellant.

Jennifer M. Tomka, Chief Deputy Seward County Public Defender, for appellee.

MOORE, Judge.

## INTRODUCTION

The State has filed an interlocutory appeal to a single judge of this court in accordance with Neb. Rev. Stat. § 29-824 (Reissue 2016). The State asserts that the district court for Seward County erred in granting Alejandrino Lopez-Martinez' motion to suppress evidence. Because I find that the arresting officer acted in good faith in connection with the stop of Lopez-Martinez and the ensuing search, the decision of the district court is reversed and the case is remanded for further proceedings.

## STATEMENT OF FACTS

The State filed an Information on February 16, 2022, charging Lopez-Martinez with possession of a controlled substance with intent to distribute (marijuana); a Class IIA felony, and possession of a controlled substance without a tax stamp; a Class IV felony. On May 26, Lopez-Martinez filed a motion to suppress all evidence obtained pursuant to the stop, search of his vehicle, detention of his person, and his arrest, which he claims was in violation of his Fourth and

- 1 -

Fourteenth Amendment rights under the United States Constitution, and Article I, Section 7 of the Constitution of the State of Nebraska.

On August 12, 2022, a hearing was held on the motion to suppress. Renae Dinkelman and Deputy Sheriff Steven Schulz, both employed by Seward County, testified, and various exhibits were received, including the recorded radio conversations between Schulz and dispatch regarding the license registration for the vehicle driven by Lopez-Martinez, and the recorded conversations from Schulz' body camera between Schulz and responding officers as well as Schulz and Sheriff Mike Vance.

On November 9, 2021, Deputy Schulz observed a white SUV traveling on Interstate 80 with extremely dark window tint, which appeared darker than the legal limit in Nebraska. He began to follow the vehicle at which time he contacted Dinkelman, a dispatcher for Seward County 911, by radio to obtain license information about the vehicle. Reading the license plate from the rear of the vehicle, Schulz asked Dinkelman to run a California license "7 Charles Young King 949," which represents the letters "CYK." Approximately one minute later, Dinkelman responded that "California, 7 Charles Young King 949, 2016 Chevy 4 door, no color given, registered to [named individual] of Modesto, California, expired 4-2 of 19."

Schulz initiated a traffic stop of the vehicle based upon the information that its license was expired. Schulz approached the passenger side of the vehicle, and upon contacting the driver, Schulz immediately smelled the odor of marijuana coming from the vehicle. Lopez-Martinez provided Schulz with his driver's license, vehicle registration, and proof of insurance. The vehicle registration showed that it was valid and not expired, and it matched the license plate. Schulz then asked Lopez-Martinez to accompany him to his patrol car and Schulz proceeded to figure out the discrepancy in the registration information.

Schulz contacted Dinkelman again and asked whether "7 Charles Young King 949" was showing expired. Dinkelman testified that she realized then that she had transposed two letters when she initially responded to Schulz. Dinkelman had her partner, Nancy, run the correct license who advised Schulz that "7 Charles Young King 949, 2014 GMC Utility expires February '22." Schulz then asked what plate he read to Dinkelman a little while ago, and she responded that she copied "7 Young Charles King 949." Dinkelman explained that she did not write down the license plate information given to her by Schulz; rather, she typed the information in the computer that she "thought he was giving me," which was admittedly incorrect. Dinkelman testified that although her employer talked to her about this mistake, she was not reprimanded. Dinkelman was not aware of any department policy change since the incident. Dinkelman was upset with herself for making the mistake.

Because he smelled the odor of marijuana before learning of the mistake with the license plate, Schulz detained Lopez-Martinez in order to conduct a probable cause search of the vehicle. Schulz radioed a few other officers to assist him; Deputies Alloway and Anderson arrived at the scene. Schulz' body camera footage shows Schulz discovering that the vehicle was in compliance with California tint laws and Alloway then suggesting that based on "good faith," Schulz was justified in stopping the vehicle.

Schulz also made a phone call to Sheriff Vance for guidance due to having made a stop based upon a mistake and whether the stop was in good faith. Schulz' body camera captured only his side of the conversation with Vance. Schulz describes the vehicle as "loaded" with marijuana,

but concedes that "really all [he had] is good faith" and that the search may prove to be a "shit show in court." Schulz is heard agreeing with Vance and informing him that the vehicle would be towed.

Schulz proceeded to search the vehicle and located vacuum-sealed packages of marijuana contained inside a black duffle bag and black suitcase, "roughly 145 pounds." Schulz admitted that he did not have probable cause to stop the vehicle if not for the mistaken license information initially provided by dispatch as the vehicle was apparently in compliance with California tint laws. Lopez-Martinez was arrested.

On Schulz' body camera, Schulz expressed his frustration regarding how the stop occurred to the other responding officers. Alloway asked Schulz if the miscommunication with dispatch regarding the license plate happened because Nancy was not hearing Schulz or because Nancy was not paying attention. Alloway stated that Nancy has "been a problem." Anderson noted that it was Dinkelman, not Nancy, who ran the license plate. Schulz responded that he did not know who it was at dispatch that ran the plate, but he was sure that he relayed the information accurately because he was directly behind the vehicle when he read the license plate. Alloway went on to say that "we can't keep having this [problem]."

At some point after the stop, Schulz called Nancy. In the recording of the conversation between Schulz and Nancy, she confirmed that Schulz had correctly relayed the license plate number to dispatch and the mistake had come from dispatch. On the recording, Schulz tells Nancy, "No worries, it happens, we're all human," and because of "[Dinkelman's] fuck up she got like 200 pounds of marijuana off [sic] the street." Nancy indicated that Dinkelman was feeling bad about the mistake and that she would relay Schulz' message to Dinkelman. Schulz and Nancy then are heard laughing before ending their phone call.

Schulz testified that he did not recall personally having previous problems with dispatch giving him wrong information. Schulz did not know whether the department has made any policy changes since this incident.

Following briefing by the parties, the district court entered an order on October 26, 2022, sustaining the motion to suppress. The district court concluded that the "good faith" exception did not apply in this case. In reaching this conclusion, the court found that the evidence shows an "ongoing problem with dispatch providing incorrect information/errors." The court noted the discussion between Schulz and Alloway in which Alloway recounted problems he had had in the past with Dinkelman. The court found that there was a history of prior mistakes by dispatch without any effort to remedy or correct the problem. The court further found that the information provided to Schulz was not an isolated instance of a mistake, but rather resulted from recurring or systemic negligence.

ASSIGNMENT OF ERROR

The State assigns that the district court erred in granting Lopez-Martinez' motion to suppress.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding

historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595 (2022).

ANALYSIS

The primary question in this appeal is whether the good faith exception to the exclusionary rule applies to the evidence seized resulting from a traffic stop which was based upon erroneous information provided to the arresting officer from dispatch.

Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005). This prohibition applies as well to the fruits of the illegally seized evidence. *Id*. Where the exclusionary rule does not result in appreciable deterrence, its use is unwarranted. *Id*.

Because the exclusionary rule should not be applied to objectively reasonable law enforcement activity, the U.S. Supreme Court created a good faith exception to the rule. See *id*. In *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), the U.S. Supreme Court reasoned the exclusionary rule is designed to deter police misconduct, rather than to punish the errors of judges and magistrates, and thus concluded a good faith exception to the exclusionary rule should apply when police officers act in objectively reasonable good faith in reliance upon a search warrant. The court has subsequently held the good faith exception also applies when police conduct a search in reasonable reliance on a subsequently invalidated statute, when police conduct a search in reasonable reliance on binding appellate precedent, and when police reasonably rely on erroneous information in a database maintained by judicial employees. See *Davis v. United States*, 564 U.S. 229, 236, 131 S.Ct. 2419 (2011); *Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185 (1995); *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160 (1987).

In *State v. Allen*, the Nebraska Supreme Court found that the good faith exception to the exclusionary rule did not apply and concluded that the trial court erred in overruling the motion to suppress. See *State v. Allen, supra*. In that case, a police officer contacted dispatch to check the registration on a particular vehicle. The dispatcher did not repeat the license number to the officer before running the check and mistakenly ran a check on the wrong license number. After being informed by dispatch that the plate did not match the vehicle, the officer stopped the vehicle and the driver was detained for a DUI investigation. The driver was ultimately arrested for driving on a revoked license. Upon returning to police headquarters, the officer learned of the dispatcher's mistake.

The *Allen* Court noted the factors considered by the U.S. Supreme Court in *United States v. Leon* and *Arizona v. Evans* in determining whether the good faith exception was applicable. These cases examined (1) whether the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right, and (2) whether there is a basis to believe the application of the exclusionary rule will have a significant effect on those responsible for seeking and transmitting vehicle registration information which can be used as a basis for an investigatory stop. See *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005). Because a dispatcher is an "adjunct to the law enforcement team," the court in *Allen* determined that the negligent

conduct in providing incorrect license information could not be used to support a finding that the officer acted reasonably and thus rendered the good faith exception inapplicable. *Id*. at 77, 690 N.W.2d at 590, quoting *Arizona v. Evans*, 514 U.S. at 15, 115 S.Ct. 1185.

After the *Allen* decision, this court addressed a similar issue in *State v. Hisey*, 15 Neb. App. 100, 723 N.W.2d 99 (2006). In that case, the district court vacated Hisey's county court conviction for operating a motor vehicle while under the influence of alcohol, and of possessing an open alcoholic beverage container, finding that the evidence obtained after the stop of Hisey's vehicle should be suppressed. Relying primarily on the holding in *Allen* we affirmed the district court, finding that because the arresting officer relied on erroneous information contained in the records of the Department of Motor Vehicles (DMV), the officer did not have probable cause to arrest Hisey.

Following the cases discussed above, the U.S. Supreme Court further clarified the good faith exception in *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695 (2009). In that case, an officer was mistakenly informed that a valid warrant existed for Herring's arrest. When the officer learned that Herring had driven to the county sheriff's department to retrieve something from his impounded truck, the officer asked the county's warrant clerk to check for any outstanding warrants for Herring's arrest. Finding none, the officer asked the clerk to check with her counterpart in a neighboring county. The neighboring county computer database reflected that there was an active arrest warrant for Herring's failure to appear. The officer then followed Herring as he left the impound lot, pulled him over, and arrested him. A search incident to the arrest revealed methamphetamine in Herring's pocket, and a pistol (which as a felon he could not possess) in his vehicle. However, a few minutes later the neighboring county warrant clerk informed the originating county that there had been a clerical mistake, as the outstanding warrant had been recalled 5 months prior.

The U.S. Supreme Court in *Herring* held that because the mistake leading to an unlawful search was the result of isolated negligence attenuated from the search, rather than systemic error or reckless disregard of constitutional requirements, the exclusionary rule did not apply. The court noted that, to trigger the exclusionary rule, police conduct must be sufficiently deliberate such that exclusion could meaningfully deter it, and sufficiently culpable that such deterrence was worth the price paid by the justice system. Because the miscommunications in *Herring* were not routine or widespread, the court concluded that the police conduct was not so culpable as to require exclusion.

Following the *Herring* decision, the Nebraska Supreme Court addressed the issue again in *State v. Bromm*, 285 Neb. 193, 826 N.W.2d 270 (2013). In that case, Bromm's dark-colored vehicle was stopped based upon incorrect information regarding the vehicle's registration, which stated that the car was white. Because the incorrect information stemmed from the county treasurer's certificate of registration, who was not an adjunct of law enforcement, the court held that the good faith exception to the exclusionary rule applied. The court noted that recent precedents from the U.S. Supreme Court demonstrated a reluctance to exclude evidence where the deterrent effect would be minimal. See *Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419 (2011) (noting exclusionary rule not applied to suppress evidence obtained as result of "nonculpable, innocent police conduct"); *Herring v. United States, supra*. The court in *Bromm* determined that it need not decide whether *State v. Hisey, supra* remains good law in light of these precedents, but rather it concluded that the evidence in the case before it did not need to be suppressed because (1)

the officer's reliance on the information he received from dispatch was objectively reasonable, (2) the erroneous information originated from an entity that cannot be considered an adjunct of the law enforcement team, and (3) the application of the exclusionary rule under these circumstances would have no deterrent effect.

This court further addressed the good faith exception to the exclusionary rule in *State v. Rolenc*, 24 Neb. App. 282, 885 N.W.2d 568 (2016). In that case, a police officer on patrol checked the license plate of Rolenc's vehicle and after learning he was the registered owner, the officer checked Rolenc's driver's license status in the Nebraska Criminal Justice Information System (NCJIS) and learned that his driver's license was revoked. NCJIS is a compilation of information from various places including the DMV and various courts throughout the state. Rolenc insisted his license was valid after which the arresting officer confirmed with a dispatcher on the police "information channel" that Rolenc's license was revoked. *Id*. at 284, 885 N.W.2d at 571. Following his arrest and inventory search of his vehicle, officers located a glass pipe with residue that tested positive for methamphetamine.

At trial, it was determined that the DMV had not timely updated Rolenc's license information to remove the revoked status after a bond forfeiture had been withdrawn and points were restored to his license. We affirmed the district court's denial of Rolenc's motion to suppress. We concluded that because there was no evidence that the delay in updating Rolenc's DMV record was the result of deliberate, reckless, or grossly negligent conduct or was the result of recurring or systemic negligence and because the marginal benefits that might be gained from suppressing the evidence obtained, the mistake did not justify the substantial costs of exclusion, the good faith exclusion applied.

Applying the foregoing propositions to the instant case, I conclude that the dispatch mistake in running the license plate was not the result of deliberate, reckless, or grossly negligent conduct, nor was it the result of recurring or systemic negligence on the part of Seward County dispatch. First, the district court was clearly wrong in its finding that there had been problems with Dinkelman in the past. The record shows that Alloway identified Nancy as the person that he had had "problems" with in the past. There was no evidence that Dinkelman had made mistakes before in responding to officers' requests for license information. Further, there was no specific evidence of what problems there had been with dispatch in the past; only that Alloway had had "problems" with Nancy. Finally, Schulz denied having experienced problems with dispatch in the past. Under these circumstances, it cannot be said that there was recurring or systemic negligence. In addition, Schulz' reliance on the information he received from dispatch was objectively reasonable.

After the arrest, the somewhat flippant responses of the officers to the dispatch mistake were concerning and could be indicative of a failure of law enforcement to take seriously the right of citizens to be free from unlawful searches and seizures. However, I conclude that the isolated mistake by Dinkelman in providing Schulz with incorrect license information does not justify the substantial cost of excluding the evidence obtained as a result of the search. Thus, I find that that the stop by Schulz of Lopez-Martinez' vehicle was made in good faith.

CONCLUSION

The decision of the district court to grant the motion to suppress is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.