Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/23/2016 09:08 AM CDT

State of Nebraska, appellee, v.
Joseph N. Rolenc, appellant.

___ N.W.2d ___

Filed August 23, 2016.    No. A-15-564.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. **Constitutional Law: Search and Seizure: Police Officers and Sheriffs.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect citizens against unreasonable seizures by police officers.

4. **Constitutional Law: Search and Seizure.** It is well settled under the Fourth Amendment that warrantless searches and seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions.

5. ____: ____. Although the Fourth Amendment protects the right to be free from unreasonable searches and seizures, it says nothing about how this right is to be enforced.

6. **Constitutional Law: Search and Seizure: Police Officers and Sheriffs.** The exclusionary rule is a judicially created remedy designed to safeguard against future Fourth Amendment violations by deterring police misconduct.

7. **Constitutional Law: Search and Seizure: Evidence.** The fact that a Fourth Amendment violation occurred does not necessarily mean that the exclusionary rule applies.

8. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime.

9. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Joseph Nigro, Lancaster County Public Defender, and Kristi Egger-Brown for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

Moore, Chief Judge, and Inbody and Bishop, Judges.

Inbody, Judge.

## I. INTRODUCTION

Joseph N. Rolenc appeals his conviction for possession of methamphetamine, a Class IV felony, and the sentence imposed thereon. He contends that the district court erred in overruling his motion to suppress and in later failing to dismiss the matter at trial. He also contends that the sentence imposed upon him was excessive.

## II. STATEMENT OF FACTS

At approximately 3 a.m. on March 6, 2014, Lincoln patrol officer Daniel Dufek was driving his patrol car when he passed Rolenc's vehicle. At that time of day there was not a lot of traffic on the road, so Dufek decided to maneuver his

patrol car into position so he could check the rear license plate of Rolenc's vehicle. Dufek ran the license plate number through the Lincoln Police Department's computer system and found that Rolenc was the registered owner of the vehicle. Dufek then checked Rolenc's driver's license status in the Nebraska Criminal Justice Information System (NCJIS) and found that Rolenc's driver's license was revoked. NCJIS is a compilation of information from various places including the Department of Motor Vehicles (DMV) and various courts throughout the state.

After Rolenc pulled his vehicle into a gas station where two other officers also happened to be sitting in their patrol cars, Dufek pulled into the gas station parking lot, advised the other officers of the situation, and the three officers contacted Rolenc. Dufek advised Rolenc that he was contacting him because Rolenc's license was revoked. Dufek requested Rolenc's license, registration, and insurance, but Rolenc could not provide any of those items. Rolenc advised Dufek that he believed that his license was valid and said there was a DMV error. Dufek then confirmed over the radio with a dispatcher on the police "information channel," where an individual dispatcher has access to DMV, National Crime Information Center, and NCJIS files, that Rolenc's license was revoked. Dufek explained that the information he had was showing a revoked status. Rolenc became agitated and was eventually taken into custody. Because Rolenc's vehicle was going to be towed, an inventory search was conducted of the vehicle. During the search, officers located a glass pipe with "crystal residue" in it which tested positive for methamphetamine.

In July 2014, Rolenc was charged with possession of methamphetamine, a Class IV felony. See Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2014). He filed motions to suppress regarding his arrest, the search of his vehicle, and any statements made by him to law enforcement. The hearing on the motions to suppress was held on February 19, 2015. Among

the witnesses testifying were Dufek; Lisa Wolfe, an administrative assistant with the DMV; and William Harry, Rolenc's defense counsel in another case.

Dufek testified as to the events as previously set forth. He also admitted that he did not observe Rolenc commit any traffic violations and that the only reason he stopped Rolenc was because of the information Dufek had received about the license revocation.

Wolfe testified that she is responsible for entering the court-ordered revocations of driving privileges. The forfeiture of a bond triggers a conviction for the purposes of a "point revocation." According to Wolfe, the court sends an electronic transmission to the DMV containing the conviction information, citation date, judgment date, what the citation was for, amount of the fine, code information, general court information, and bond forfeiture information. If the identifying information included in the court's electronic transmission matches the DMV's identifying information, the conviction will automatically be placed on the individual's driving record. The computer calculates whether the driver was assessed 12 or more points in a 2-year time period, and if so, the revocation process is commenced. If the identifying information provided by the court does not match the DMV's records, an abstract of conviction prints out and DMV employees manually post the conviction to the individual's driving record.

According to Wolfe, if an individual's bond is reinstated at some point after a bond forfeiture, the court sends the updated information to the DMV to remove the conviction from the driver's record, and then the driver gets the points back on his or her license; or if the bond is withdrawn, like in Rolenc's case, the court tells the DMV to withdraw the bond forfeiture, and then the DMV removes the conviction from the driver's record. In order to remove the conviction from a driver's record, the court employee has "specific directions given from their help desk that they have to send screen prints" and

indicate what the next step is, then the document needs to have the court seal and needs to be signed and dated. Wolfe is one of three people at the DMV that have the capability to delete a conviction from a driver's record.

In early 2014, Wolfe was involved in some communication with the Douglas County Court involving Rolenc's driving record and a bond forfeiture. Rolenc's bond was revoked on November 21, 2013, but judgment was not transmitted until February 21, 2014. On February 25, Rolenc's license was revoked for points and a letter was mailed notifying Rolenc of the revocation. This letter notified Rolenc that his license was revoked for 6 months beginning February 25 until August 25. The letter further stated, "Your Nebraska operating privileges will remain in a revoked status until you meet the requirements for reinstatement and *you receive a letter of reinstatement from this office*." (Emphasis supplied.)

On February 28, 2014, at 10:19 a.m., the Douglas County Court faxed a journal entry regarding the withdrawal of Rolenc's bond forfeiture to the DMV. The county court faxed the information to the DMV a second time on March 4 at 4:03 p.m. Wolfe testified that bond forfeitures have to be entered manually, that the DMV needs specific information in the proper form in order to process the bond forfeitures, and that neither of the faxes from the county court contained the information needed by the DMV to process the withdrawal of Rolenc's bond forfeiture. On March 5 at 1:54 p.m., Wolfe sent an e-mail to the Douglas County Court along with directions regarding what the DMV needed to have on the abstracts in order to withdraw bond forfeitures. About half an hour later, Wolfe received a fax from the Douglas County Court which again did not provide Wolfe with the needed information. The following day, March 6, at 1:47 p.m., Wolfe sent a second e-mail to the Douglas County Court instructing that documents need to be signed, dated, and marked with the court seal before the documents are faxed to the DMV. At 3:19 p.m., she then received another fax from the Douglas County

Court which removed Rolenc's conviction and restored the points on Rolenc's record. Wolfe then removed the point revocation from Rolenc's driving record and, on March 6, generated a notice of rescission letter which notified Rolenc that his operator's license was valid.

Wolfe admitted on cross-examination that it was important that DMV records be updated quickly so that if a person's license is wrongly suspended or revoked, the error can be corrected, but she stated that the DMV has to receive the correct information in order to make the correction. In Rolenc's case, his license was never suspended incorrectly; the revocation was based on conviction information provided by the court, there was a bond forfeiture, and the points revocation was a valid revocation. She further testified that there was no error by any DMV employee in entering any sort of information regarding Rolenc's revocation.

Harry represented Rolenc in the Douglas County Court. On March 5, 2014, Harry spoke to a Douglas County Court employee attempting to get Rolenc's driving privileges reinstated. Harry was informed that the matter was taken care of, and Harry relayed this information to Rolenc.

The district court overruled Rolenc's motions to suppress and articulated its findings from the bench. The court found there was evidence the DMV mailed Rolenc a letter of revocation under the Nebraska point system advising Rolenc that his operating privileges would remain revoked until he met the requirements of reinstatement and that Rolenc would receive a letter of reinstatement. The court further found that because Rolenc had not received a letter of reinstatement, he knew he did not have a valid operator's license.

Although the district court found that there was fault with the DMV in that the DMV "could have acted a little faster," that fault was not fatal. The court further stated that Dufek relied on information provided to him which was valid at that time, Dufek's reliance upon that information was objectively reasonable, and the application of the exclusionary rule

under the circumstances presented would not have a deterrent effect.

Finally, the court found that although he appreciated that Rolenc's attorney had talked to Rolenc and told him things were "all taken care of," Rolenc could not rely upon these representations, because the letter of revocation stated that Rolenc had to receive a letter of reinstatement of his driver's license which Rolenc had not received. Thus, the court found that Rolenc's arrest was valid, as was the inventory search of his vehicle.

A stipulated trial was held on March 18, 2015, with Rolenc preserving the issues raised in his motions to suppress. The court found Rolenc guilty of the charged offense and thereafter sentenced Rolenc to 12 to 24 months' imprisonment.

### III. ASSIGNMENTS OF ERROR

Rolenc contends that the district court erred in overruling his motion to suppress evidence and in later failing to dismiss the matter at trial. He also contends that the sentence imposed was excessive.

### IV. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Tyler*, 291 Neb. 920, 870 N.W.2d 119 (2015).

[2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Hunnel*, 290 Neb. 1039, 863 N.W.2d 442 (2015).

## V. ANALYSIS

### 1. DENIAL OF MOTION TO SUPPRESS

Rolenc contends that the district court erred in overruling his motion to suppress evidence and in later failing to dismiss the matter at trial.

### (a) Relevant Law

[3,4] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect citizens against unreasonable seizures by police officers. It is well settled under the Fourth Amendment that warrantless searches and seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions. *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001). The U.S. Supreme Court has said:

> When a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation. The very phrase "probable cause" confirms that the Fourth Amendment does not demand all possible precision. And whether the error can be traced to a mistake by a state actor or some other source may bear on the analysis. For purposes of deciding this case, however, we accept the parties' assumption that there was a Fourth Amendment violation. The issue is whether the exclusionary rule should be applied.

*Herring v. United States*, 555 U.S. 135, 139, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009).

Likewise, in the instant case, by centering their arguments on whether the exclusionary rule applies, both Rolenc and the State have proceeded under the assumption that there was a Fourth Amendment violation; thus, for the purposes of deciding this case, we accept this assumption and consider the issue of whether the exclusionary rule should be applied.

[5-7] Although the Fourth Amendment protects the right to be free from "'unreasonable searches and seizures,'" it says nothing about how this right is to be enforced. *Davis v. United States*, 564 U.S. 229, 231, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). The exclusionary rule is a judicially created remedy designed to safeguard against future Fourth Amendment violations by deterring police misconduct. *Arizona v. Evans*, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995); *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014). Thus, the fact that a Fourth Amendment violation occurred does not necessarily mean that the exclusionary rule applies. *Herring v. United States*, 555 U.S. at 137 ("suppression is not an automatic consequence of a Fourth Amendment violation"); *State v. Tyler*, 291 Neb. 920, 937, 870 N.W.2d 119, 132 (2015), *cert. denied* ___ U.S. ___, 136 S. Ct. 1207, 194 L. Ed. 2d 212 (2016) ("[t]hat a Fourth Amendment violation occurred does not necessarily mean that the exclusionary rule applies"). "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Davis v. United States*, 564 U.S. at 237.

In *Arizona v. Evans, supra*, the U.S. Supreme Court applied the good-faith exception to the exclusionary rule in a case where the police reasonably relied on erroneous information concerning an arrest warrant in a database maintained by court employees. The Court reasoned that court employees were not adjuncts to the law enforcement team, there was no evidence court employees were inclined to ignore or subvert the Fourth Amendment, and court employees had no stake in the outcome of particular criminal prosecutions; therefore, application of the exclusionary rule would have little effect on the conduct of court employees. *Arizona v. Evans, supra*.

Similarly, the Nebraska Supreme Court did not apply the exclusionary rule where an officer reasonably relied upon incorrect information from the vehicle registration information originating from a county treasurer's office because the court held that employees of the county treasurer's office fall

within the court employees exception to the exclusionary rule. *State v. Bromm*, 285 Neb. 193, 826 N.W.2d 270 (2013).

The outcome was different, however, when the erroneous information relied upon by an officer originated from employees of Nebraska's DMV. In *State v. Hisey*, 15 Neb. App. 100, 723 N.W.2d 99 (2006), this court held that DMV employees are adjuncts of law enforcement and that, where an arresting officer relied on erroneous information contained in the DMV records that the defendant's driver's license was impounded, the officer did not have probable cause to arrest the defendant and the good faith exception to the exclusionary rule did not apply to evidence seized as a result of an unconstitutional search. Similarly, the Nebraska Supreme Court has ruled that the good faith exception to the exclusionary rule did not apply where a dispatcher negligently entered the wrong license number into the computer, resulting in the dispatcher's providing incorrect information to an officer. *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

Four years after the Nebraska Supreme Court's decision in *State v. Allen, supra*, and 3 years after our decision in *State v. Hisey, supra*, the U.S. Supreme Court issued its decision in *Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). In *Herring*, officers arrested the defendant based on a warrant listed in a neighboring county's database and a search of the defendant yielded drugs and a gun. It was later revealed that the warrant had been recalled 5 months earlier, but, due to a negligent bookkeeping error by another police employee, the information had never been entered into the database. The U.S. Supreme Court stated:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate,

reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Id.*, 555 U.S. at 144. The Court held that "isolated," "nonrecurring" negligence by police employees lacked the culpability required to justify the harsh sanction of exclusion. *Id.*, 555 U.S. at 137, 144. See *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011).

Two years later, in 2011, the U.S. Supreme Court in *Davis v. United States, supra*, held that when police conduct a search in objectively reasonable reliance on binding appellate precedent that is later overruled, the exclusionary rule does not apply. The Court explained that the deterrence benefits of exclusion varies with the culpability of the law enforcement conduct. *Id.* See *Herring v. United States, supra*. For example, "[w]hen the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Davis v. United States*, 564 U.S. at 238, quoting *Herring v. United States, supra*. However, "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, . . . or when their conduct involves only simple, 'isolated' negligence, . . . the '"deterrence rationale loses much of its force,"' and exclusion cannot 'pay its way.'" *Davis v. United States*, 564 U.S. at 238 (citations omitted). The Court stated that "in 27 years of practice under [the] good-faith exception, [the Court had] 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct." *Id.*, 564 U.S. at 240.

In 2013, in *State v. Bromm*, 285 Neb. 193, 826 N.W.2d 270 (2013), the Nebraska Supreme Court acknowledged the U.S. Supreme Court's recent decisions in *Herring v. United States, supra*, and *Davis v. United States, supra*. Although the State, in *Bromm*, raised the issue of whether this court's decision in *State v. Hisey*, 15 Neb. App. 100, 723 N.W.2d 99 (2006), remained good law in light of the recent U.S. Supreme

Court precedent, the Nebraska Supreme Court decided the case without reaching that issue. Our holding in *Hisey* is certainly worthy of reexamination in light of the later U.S. Supreme Court decisions discussed above, and when interpreting the Fourth Amendment of the U.S. Constitution, we are bound by the final authority of the U.S. Supreme Court. See *Arizona v. Evans*, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995). Thus, in our application of the law to the instant case, we consider and apply the most recent pronouncements by the U.S. Supreme Court, as we are required to do.

### (b) Application to Instant Case

In the instant case, the district court found fault with the DMV in that it could have acted "a little faster" in updating Rolenc's records. The district court also stated that the DMV

> could have picked up the paper, maybe could have acted a little faster, maybe could have done something . . . .
>
> . . . .
>
> . . . Should [the DMV] have picked up those papers and figured out something to do with them? Yes. Is it inexcusable? I probably wouldn't go that far. But it took them a while to get that organized.

Although the district court did not explicitly state that it considered the DMV's actions to be negligent, the court's comments implied negligence rather than reckless or deliberate action on the part of the DMV.

As early as 1995, in a concurrence to *Arizona v. Evans, supra*, Justice O'Connor, with whom Justice Souter and Justice Breyer joined, pointed out:

> Surely it would *not* be reasonable for the police to rely . . . on a recordkeeping system, their own or some other agency's, that has no mechanism to ensure its accuracy over time and that routinely leads to false arrests, even years after the probable cause for any such arrest has ceased to exist (if it ever existed).

*Id.*, 514 U.S. at 17. Justice O'Connor further stated:

In recent years, we have witnessed the advent of powerful, computer-based recordkeeping systems that facilitate arrests in ways that have never before been possible. The police, of course, are entitled to enjoy the substantial advantages this technology confers. They may not, however, rely on it blindly. With the benefits of more efficient law enforcement mechanisms comes the burden of corresponding constitutional responsibilities.

*Id.*, 514 U.S. at 17-18. In a separate concurrence, Justice Souter, with whom Justice Breyer joined, acknowledged:

[W]e do not answer another question that may reach us in due course, that is, how far, in dealing with fruits of computerized error, our very concept of deterrence by exclusion of evidence should extend to the government as a whole, not merely the police, on the ground that there would otherwise be no reasonable expectation of keeping the number of resulting false arrests within an acceptable minimum limit.

*Id.*, 514 U.S. at 18.

And, in fact, in 2009, in *Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009), the U.S. Supreme Court acknowledged that not all recordkeeping errors by the police are immune from the exclusionary rule. For example, "[i]f the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation." *Herring v. United States*, 555 U.S. at 146. However, in the instant case, there was no evidence that the delay in updating Rolenc's DMV record had happened at any other time; no evidence that the delay was the result of deliberate, reckless, or grossly negligent conduct; and no evidence that it was the result of recurring or systemic negligence. Thus, in light of U.S. Supreme Court precedent that "the deterrent effect of suppression must be substantial and outweigh any harm to

the justice system," in cases such as the instant case where the mistakes made by the adjuncts of police are the "result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements," the marginal benefits that might be gained from suppressing the evidence obtained do not justify the substantial costs of exclusion. See *id.*, 555 U.S. at 147.

Further, application of the exclusionary rule could not be expected to alter the behavior of the police officer in the instant case.

> "'[W]here the officer's conduct is objectively reasonable, "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty."' . . ."

*Arizona v. Evans*, 514 U.S. 1, 11-12, 115 S. Ct. 1185, 121 L. Ed. 2d 34 (1995).

Thus, we find that because there was no evidence that the delay in updating Rolenc's DMV record was the result of deliberate, reckless, or grossly negligent conduct or was the result of recurring or systemic negligence and because the marginal benefits that might be gained from suppressing the evidence obtained do not justify the substantial costs of exclusion, we affirm the order of the district court denying Rolenc's motion to suppress.

## 2. EXCESSIVE SENTENCE

Rolenc's second assignment of error is that the sentence imposed upon him was excessive. Rolenc argues that he should have been either given a shorter term of imprisonment or sentenced to a term of probation.

[8,9] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education

and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. *State v. Hunnel*, 290 Neb. 1039, 863 N.W.2d 442 (2015). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Rolenc was convicted of possession of methamphetamine, a Class IV felony. See § 28-416(3). Rolenc's sentence of 12 to 24 months' imprisonment is within the statutory sentencing range for Class IV felonies, which are punishable by up to 5 years' imprisonment, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014).

At the time of the preparation of the presentence investigation report, Rolenc was 40 years old, divorced, and with two dependents. Rolenc has a substantial adult criminal history including convictions for stealing money or goods, trespassing, negligent driving, resisting arrest, possession of marijuana (1 ounce or less), possession of drug paraphernalia, operating a vehicle without a license, driving under suspension, theft by receiving stolen property, flight to avoid arrest, hindering arrest, attempted theft by receiving stolen property, disturbing the peace, third degree assault on an officer, issuing a bad check, attempting to issue a bad check, child abuse, and burglary.

Based upon the facts, the sentence imposed is well within the statutory sentencing range, and considering Rolenc's substantial criminal history, we cannot say that the sentence imposed was excessive.

## VI. CONCLUSION

In sum, having considered and rejected Rolenc's assignments of error, his conviction and sentence are affirmed.

AFFIRMED.